552 P.2d 769
**STATE of Arizona, Appellee,**

v.

**Clarence Earl JONES, Appellant.**
**No. 1 CA–CR 1520.**

Court of Appeals of Arizona,
Division 1,
Department B.
July 15, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Teresa S. Thayer, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

SCHROEDER, Judge.

This is an appeal from a conviction of second degree burglary arising from the taking of a pile of sheets from the loading area outside a linen supply house. Appellant was sentenced to a term of not less than two nor more than four years. He attacks the conviction and sentence on the ground that the evidence failed to show that the premises involved constituted a "fenced or otherwise enclosed commercial yard used for storing equipment or supplies . . ." which could be the subject of a burglary within the meaning of A.R.S. § 13–302. Appellant's motion for directed verdict was denied by the trial court.

The company involved is Milum Textile Services, located on Seventh Avenue in Phoenix. The evidence at trial reflected that adjacent to the company building is a fenced-in area with access from Sixth Avenue by means of a walk-through gate, and a double gate for trucks.

On the morning of September 17, 1974, one of the company's drivers pulled into the area, parked the truck, and went into the building. A cart piled with sheets to be loaded onto the truck was pushed from the building into the enclosed area. A few minutes later, while the driver was speaking with someone inside the door of the building, he noticed two men loading the sheets into a car on Sixth Avenue. After being confronted by company employees, the two men replaced the linens on the truck and left. Four witnesses at trial identified the appellant as one of the men.

The issue before us is whether on these facts the defendant could properly have been convicted of the crime of burglary as defined in A.R.S. § 13–302 as amended.

Under our statutes as they existed prior to 1969, one could not commit a burglary by entering any sort of outside yard. Burglary was limited to the entry of structures or vehicles. At common law, the crime was even narrower. However, in 1969, our statute was expanded to cover entry of "a fenced or otherwise enclosed commercial yard used for storing equipment or supplies, including but not limited to scrap metals, steel or construction materials. . . ." We are aware of no similar provision in the burglary statutes of other states.

It is not disputed that the yard involved in this case was fenced, and that it was commercial. The problem centers on whether it was "used for *storing* equipment or supplies. . . ." (Emphasis added).

The record contains very little evidence concerning how the area was used. The evidence showed that delivery trucks were parked in the area for loading purposes, and that linens were placed in the area before being put on the trucks. One company employee described the enclosure as "like a parking truck area, a loading area." Another witness stated that the carts loaded with sheets were not stored outside but were just placed there for loading.

The State relies upon *State v. Patterson,* 21 Ariz.App. 136, 516 P.2d 1231 (1973), which held that a fenced yard used for storing copper wire by the City of Mesa could be the subject of a burglary under our statute. However, in *Patterson,* it was undisputed that the yard was used for "storage," and the issue was whether it could be considered "commercial." The court there held that it could, since the term commercial yard means: "one maintained for business, commercial, industrial or municipal purposes including . . . materials held for sale as distinguished from a yard wherein the materials are stored for the private and personal use of the owner of the yard." (21 Ariz.App. at 137, 516 P.2d at 1232). *Patterson* is of no assistance in resolving the issue presented here.

The State argues further that since the statute does not specify any particular length of time that equipment and materials must be "stored" in the yard, then the mere existence of materials in the enclosed area for any length of time is sufficient. The State, in essence, contends that the statute should broadly apply to all commercial yards in which equipment or supplies are placed.

The State has cited no authority to support such an interpretation of the statute and we believe that it fails to give effect to the statute's express requirement that the yard be "used for storing."

■ In our view, by adopting the concept of storage, the legislature clearly intended that the yard be used for the keeping of equipment or supplies on a more permanent basis than the mere transitory period involved in loading and unloading. Our conclusion comports with the substantial body of case law which has developed in relation to the concept of storage.

A leading case is *Monument Garage Corporation v. Levy,* 266 N.Y. 339, 194 N.E. 848, 850 (1935), in which Judge Lehman distinguished between "storage" and "parking." He stated: "One has a certain degree of permanency, while the other connotes transience." *See also Service Realty Corp. v. Planning & Zoning Board of Ap.,* 141 Conn. 632, 109 A.2d 256, 260 (1954), adopting the same rationale. In *New York Central Railroad v. Ridgefield,* 84 N.J.Super. 85, 201 A.2d 67 (1964), the court, also following *Monument Garage Corp., supra,* held that the temporary placement of new cars for a day or two in a railroad yard before being loaded onto trucks was not "storage" and could not be prohibited under a zoning ordinance proscribing storage. In *Goodyear Tire & Rubber Co. v. Northern Assur. Co., Ltd.,* 92 F.2d 70, 72 (2d Cir. 1937), the question was whether rubber lying on a pier awaiting shipment should be considered "in storage" within the meaning of an insurance policy exclusion. The court held that the rubber was not in storage. We perceive no reason for reaching a different result with respect to the trucks and linens awaiting loading for delivery in this case.

■ It may well be that the appellant could have been charged with another and lesser crime such as theft, but he was not. The requirements for the crime of burglary, with which appellant was charged, were not satisfied in this case.

In view of our disposition of the matter, it is not necessary for us to reach the appellant's contention that improper identification evidence was admitted at trial.

The conviction and sentence are reversed.

JACOBSON, P. J. and WREN, J., concurring.