NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CASEY BRANDON SIBLEY, *Appellant.*

No. 1 CA-CR 17-0768
FILED 5-31-2018

Appeal from the Superior Court in Maricopa County
No. LC2017-000225-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Scottsdale City Prosecutor's Office, Scottsdale
By Seth Peterson
*Counsel for Appellee*

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, David Timchak (argued)
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**          Casey Brandon Sibley appeals his conviction and imposition of probation for threatening or intimidating. He challenges the facial constitutionality of the statute that defines the offense.[1] For the following reasons, we affirm.

### FACTS[2] AND PROCEDURAL BACKGROUND

**¶2**          When the concierge at Sibley's condominium complex informed Sibley he needed to move his vehicle because it was illegally parked, Sibley became upset and "[en]raged." Sibley repeatedly stated he was "gonna shoot those bitches in the HOA" if his car was towed. Believing Sibley's statement to be a threat, the concierge informed security of the statements. When two women who worked in the HOA office learned of the threat, they became concerned, scared, stressed, distraught, and felt threatened.[3] The victims hired undercover police officers and extra security guards for protection.

---

[1]          Sibley also argues insufficient evidence supports his conviction. As Sibley correctly recognizes, this court lacks jurisdiction to address that contention because Sibley's case commenced in municipal court. Ariz. Rev. Stat. § 22-375; *State v. Yabe*, 114 Ariz. 89, 90 (App. 1977). We decline Sibley's invitation to treat his request for relief on this basis as a petition for special action.

[2]          We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against Sibley. *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[3]          Sibley had previously been very loud and "verbally aggressive" to at least one of the women who worked in the HOA office.

¶3          The City of Scottsdale subsequently charged Sibley with one count each of threatening or intimidating and disorderly conduct, both class 1 misdemeanors. The municipal court found Sibley guilty of threatening or intimidating, and not guilty of disorderly conduct. The court suspended sentence and placed Sibley on 11 months of unsupervised probation. Sibley appealed to superior court, which affirmed. Sibley timely appealed to this court, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, -4033(A)(1), and 22-375.

## DISCUSSION

¶4          As relevant here, "[a] person commits threatening or intimidating if the person threatens or intimidates by word or conduct . . . [t]o cause physical injury to another person[.]" A.R.S. § 13-1202(A)(1).

¶5          Sibley challenges the facial validity of § 13-1202(A)(1). He first argues the statute violates the First Amendment because it does not require proof of "wrongful intent." He also contends § 13-1202(A)(1) is unconstitutionally overbroad and vague. We review *de novo* whether a statute is constitutional. *State v. Russo*, 219 Ariz. 223, 225, ¶ 4 (App. 2008). The party challenging a statute's constitutionality bears the burden of establishing its invalidity and must overcome a "strong presumption" that the statute is constitutional. *State v. Kaiser*, 204 Ariz. 514, 517, ¶ 8 (App. 2003).

## A.          Section 13-1202(A)(1) Does Not Punish Speech Protected by the First Amendment.

¶6          In 2001, this court construed § 13-1202(A)(1) as punishing a "true threat," which we defined as "a threat if, under the circumstances, a reasonable person would foresee that [a defendant's] words would be taken as a serious expression of an intent to inflict bodily harm, and [the] statements were not the result of mistake, duress, or coercion." *In re Kyle M.*, 200 Ariz. 447, 451–52, ¶¶ 22–23 (App. 2001). In concluding the legislature intended "true threats" to constitute threatening or intimidating under § 13-1202(A)(1), we noted the legislature in 1994 deleted from § 13-1202(A) the phrase "with the intent to terrify[,]" and did not replace that phrase with "any words describing a culpable mental state." *Id.* at 450, ¶ 13. Accordingly, we rejected the notion that § 13-1202(A)(1) "necessarily includes the culpable mental state of 'wrongful intent[]' . . . [because] . . . we cannot reinsert into [§] 13-1202(A)(1) under the guise of judicial construction words of limitation that the legislature has expressly deleted." *Id.* at ¶ 14. Instead, we explained "a culpable mental state is necessarily

involved in the commission of the offense," and that our adopted definition of "true threat" "sufficiently narrows the words or conduct prohibited without infringing upon the privileges of free speech guaranteed by our state and federal constitutions." *Id.* at 450, 451, ¶¶ 15, 22.

¶7        In a subsequent case, we noted that the *Kyle M.* court's "[g]rafting the 'true threat' requirement into [§ 13-1202(A)(1)] . . . resolved constitutional concerns based on the first amendment right to free speech." *In re Ryan A.*, 202 Ariz. 19, 22, ¶ 8 (App. 2002); *see United States v. Alvarez*, 567 U.S. 709, 717 (2012) ("true threat[]" is a category of expression permissibly subject to a content-based restriction on speech); *Virginia v. Black*, 538 U.S. 343, 359 (2003) (citing the Court's prior cases that recognize "the First Amendment also permits a State to ban a 'true threat'"). Thereafter, the Arizona Supreme Court also noted that the definition of "true threat" adopted in *Kyle M.* "avoid[ed] constitutional conflict[.]" *Citizen Pub'g Co. v. Miller*, 210 Ariz. 513, 520, ¶ 29 (2005).[4]

---

[4]        Sibley argues the *Miller* court implicitly recognized that *Black* requires proof of wrongful intent for speech to be unprotected as a "true threat." *Miller* did not do so; instead, *Miller* expressly noted that the United States Supreme Court in *Black* held:

> [C]ross burnings committed with an intent to intimidate could be constitutionally prohibited, [and] the Court explained the true threat doctrine as follows:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.

*Miller*, 210 Ariz. at 520, ¶ 28 (alteration in original). In making this argument, Sibley contends the Arizona Supreme Court's recognition in *Miller* that *Kyle M.* adopted a test "substantially similar" to the *Black* Court's "true threat" test indicates the two tests are not identical. *See id.* at ¶ 29. We are not persuaded, however, that the obvious conclusion flowing from this observation is that proof of a defendant's wrongful subjective intent is necessary for a "true threat" to be unprotected by the First Amendment.

¶8　　　　　Nonetheless, Sibley relies on the United States Supreme Court's plurality conclusion in *Black* to argue that a "true threat" punishable under the First Amendment must be made with "wrongful intent." In *Black*, the Court considered a First Amendment challenge to a Virginia statute that criminalized cross burnings committed with the intent to intimidate. *Black*, 538 U.S. at 347. A majority of the Court held that "[i]nstead of prohibiting all intimidating messages," Virginia may ban such a "particularly virulent form of intimidation." *Id.* at 363. The Court also addressed the statute's provision, as interpreted through the trial court's jury instruction, that specified cross burning was *prima facie* evidence of intimidation. *Id.* at 363–64. A plurality of the Court found that provision facially unconstitutional, reasoning that cross burning was "constitutionally proscribable intimidation. But that same act may mean only that the person is engaged in core political speech." *Id.* at 364–65. The Court defined "[i]ntimidation in the constitutionally proscribable sense of the word" as "a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 360.

¶9　　　　　*Black* did not hold the First Amendment forbids punishment of a threat made without proof of "wrongful intent." As Justice Thomas recently noted, at issue in *Black* was a statute that expressly required an intent to intimidate; thus, the Court "had no occasion to decide whether such an element was necessary in threat provisions silent on the matter." *Elonis v. United States*, 135 S. Ct. 2001, 2027 (2015) (Thomas, J., dissenting). Further, although in *Cassel*—a case Sibley leans upon heavily—the Ninth Circuit Court of Appeals relied on the *Black* plurality's definition of "intimidation," *see supra* ¶ 8, in broadly concluding, "[t]he clear import of this definition is that only *intentional* threats are criminally punishable consistently with the First Amendment[,]" other federal courts have concluded an objective standard like the one we adopted in *Kyle M.* and applied in *Ryan A.* is appropriate. *United States v. Cassel*, 408 F.3d 622, 631 (9th Cir. 2005); *see Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) ("It is not necessary that the defendant intend to, or be able to carry out his threat; the only intent requirement for a true threat is that the defendant intentionally or knowingly communicate the threat."), *as amended* (July 10, 2002); *United States v. D'Amario*, 461 F. Supp. 2d 298, 302 (D.N.J. 2006) ("The Third Circuit does not share the Ninth Circuit's apparent inability to determine what comprises a 'true threat.'"); Casey Brown, *A True Threat to First Amendment Rights: United States v. Turner and the True Threats Doctrine*, 18 Tex. Wesleyan L. Rev. 281, 295–96 (2011) (noting "[t]he Cassel court's interpretation of Black has been severely criticized by other circuits" and discussing cases).

We agree with those courts' description of *Cassel* as an outlier opinion regarding this issue, and therefore, we do not follow it.[5]

¶10      Based on our holding in *Kyle M.* that § 13-1202(A)(1) prohibits threats that a reasonable person would foresee would cause fear — a holding that this court and the Arizona Supreme Court subsequently referred to approvingly — we decline to conclude that a successful prosecution under the statute must prove the defendant intended to cause fear. Because the First Amendment's guarantee of free speech does not protect "true threats," § 13-1202(A)(1) is not facially unconstitutional on First Amendment grounds. *See State v. Meeds*, 1 CA-CR 16-0281, 2018 WL 2054176, at *6, ¶ 28 (Ariz. App. May 3, 2018) (citing *Kyle M.* for the proposition that the conduct of threatening or intimidating prohibited in § 13-1202(A)(1) is not protected by the First Amendment).

**B.      Section 13-1202(A)(1) Is Not Unconstitutionally Overbroad or Vague.**

¶11      Similarly, Sibley argues § 13-1202(A)(1) is unconstitutionally overbroad and vague because the legislature removed any requirement of "wrongful intent" from the statute.[6] Sibley also emphasizes the reasonable person standard enunciated in *Kyle M.* and complains that "a conviction . . . rises or falls on the judge's or jury's determination of a reasonable person." According to Sibley, the statute is therefore vague because "it imposes criminal liability based on the finder of fact[']s

---

5       While we consider the opinions of the lower federal courts regarding the interpretation of the Constitution, such authority is not controlling on Arizona courts. *State v. Montano*, 206 Ariz. 296, 297, ¶ 1, n.1 (2003) ("We are not bound by the Ninth Circuit's interpretation of what the Constitution requires."); *State v. Chavez*, 243 Ariz. 313, 315, ¶ 4, n.2 (App. 2017).

6       Sibley arguably lacks standing to raise his vagueness challenge. His repeatedly stating that he was "gonna shoot those bitches in the HOA" while "enraged" clearly fell within the legitimate goal of § 13-1202(A)(1) to protect individuals from fear of violence. *See Black*, 538 U.S. at 360 ("[A] prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.") (quotations omitted); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

determination, months or years later, that a speaker has misjudged a juror's or judge's determination of the allusive 'reasonable person.'"

¶12        "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but . . . includes within its scope activities which are protected by the First Amendment." *State v. Jones*, 177 Ariz. 94, 99 (App. 1993) (citation omitted). "A statute is unconstitutionally vague if it fails to provide 'person[s] of ordinary intelligence a reasonable opportunity to know what is prohibited' and fails to contain explicit standards of application to prevent arbitrary and discriminatory enforcement." *State v. Poshka*, 210 Ariz. 218, 220, ¶ 5 (App. 2005) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). A statute need not be drafted with absolute precision to satisfy due process. *State v. Lefevre*, 193 Ariz. 385, 390, ¶ 18 (App. 1998).

¶13        We reject Sibley's challenge to § 13-1202(A)(1) on overbreadth and vagueness grounds. First, we have expressly decided that the absence of the speaker's subjective wrongful intent as a necessary element in § 13-1202(A)(1) does not render the statute violative of the First Amendment, an argument Sibley reiterates. *See supra* ¶ 10. And Sibley's implied assertion that "a threat if, under the circumstances, a reasonable person would foresee that [a defendant's] words would be taken as a serious expression of an intent to inflict bodily harm, and [the] statements were not the result of mistake, duress, or coercion[,]" *In re Kyle M.*, 200 Ariz. at 452, ¶ 23, equates to an unpopular "minority view point" strains credibility.

¶14        Second, Sibley's complaint about a fact finder's "post hoc" determination of reasonableness has no merit as a basis for finding § 13-1202(A)(1) is infirm on vagueness grounds. *See United States v. Ragen*, 314 U.S. 513, 523 (1942) ("The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct."). "Such after the fact determinations of reasonableness by a jury are commonplace. Indeed, as this court has observed, 'ex post facto assessments of the reasonableness of conduct and state of mind are ubiquitous and probably indispensable in the law.'" *Lefevre*, 193 Ariz. at 391, ¶ 22 (quoting *State v. Buhman,* 181 Ariz. 52, 54 (App. 1994)).

¶15        For these reasons, Sibley fails to establish § 13-1202(A)(1) is unconstitutionally overbroad or vague.

## CONCLUSION

**¶16** Sibley's conviction and probation are affirmed. The stay of Sibley's sentence previously entered by the court is lifted.



AMY M. WOOD • Clerk of the Court
FILED: AA